# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| UNIVERSAL STABILIZATION TECHNOLOGIES, INC., Plaintiff, v. ADVANCED BIONUTRITION CORP., Defendant. | CASE NO. 17cv87-GPC(MDD) **ORDER DENYING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, FOR IMPROPER VENUE AND MOTION TO TRANSFER TO THE DISTRICT OF MARYLAND** [Dkt. No. 12.] |
|---|---|

Before the Court is Defendant's motion to dismiss for lack of personal jurisdiction, and improper venue, and alternatively, a motion to transfer the case to the District of Maryland. (Dkt .No. 12.) An opposition was filed as well as a reply. (Dkt. Nos. 15, 20.) Based on the reasoning below, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction and improper venue, and also DENIES Defendant's motion to transfer the case to the District of Maryland.

## Background

Plaintiff Universal Stabilization Technologies, Inc. ("Plaintiff" or "UST") filed a complaint against Defendant Advanced Bionutrition Corporation ("Defendant" or "ABN") for correction of inventorship of U.S. Patent No. 8,907,245 ("'245 patent") pursuant to 35 U.S.C. § 256, unjust enrichment, declaratory relief, and constructive trust and accounting. (Dkt. No. 1, Compl.)

Plaintiff UST is a Delaware corporation with its principal place of business in San Diego, CA. (Id. ¶ 2.) Dr. Victor Bronshtein ("Dr. Bronshtein"), founder and President of UST, "is a world renowned and recognized expert in the field of preserving biologics including biomacromolecules, bacteria, viruses, and mammalian cells from damage during cryopreservation and preservation in a dry state." (Id.) Defendant ABN is a Maryland corporation with its principal place of business in Columbia, Maryland and is designated as the sole owner of the '245 patent at the U.S. Patent & Tradmark Office. (Id. ¶ 3.)

According to the complaint, ABN contacted UST in San Diego, California seeking a consulting arrangement with Dr. Bronshtein about the preservation of probiotic bacteria using processes and compositions of matter known only to Dr. Bronshtein and UST. (Id.) In 2004, ABN hired UST to assist and disclose information to it related to a project concerning the preservation of probiotic bacteria. (Id. ¶ 7.) Dr. Bronshtein met with ABN and disclosed, in confidence, UST's previously developed know-how that became the claimed subject matter of the '254 patent. (Id.) On January 17, 2012, the '245 patent, concerning the "subject matter of preserving probiotic material," issued and identified Mordechi Harei and Keren Kohavi-Beck as the alleged inventors of the compositions and the processes claimed in the '245 patent. (Id. ¶ 8.) The complaint, in fact, alleges that Dr. Bronshtein is the inventor of the claimed processes of the '245 patent and the subject matter of the '245 patent reflects inventions known and conceived by him and disclosed by him to ABN. (Id. ¶ 9.)

The complaint claims that Dr. Bronshtein was incorrectly not named as the sole inventor of the claimed subject matter of the '245 patent, or in the alternative, incorrectly not named as a co-inventor of the subject matter of the '245 patent. (Id. ¶ 13.) The remaining state and common law causes of action are based on the same underlying facts, and also seek declaratory relief that UST is the owner or co-owner of the '245 patent. (Id. ¶¶ 17, 18, 20.)

Defendant moves to dismiss for lack of personal jurisdiction and improper

venue, and alternatively, moves to transfer the case to the District of Maryland pursuant to 28 U.S.C. § 1404. Plaintiff opposes.

## Discussion

**A.    Legal Standard on Personal Jurisdiction**

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." In re Western States Wholesale Natural Gas Antitrust Litigation v. Oneok, Inc., 715 F.3d 716, 741 (9th Cir. 2013). If the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make "a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Bryton Purcell LLP v. Recordon & Recordon, 575 F.3d 981, 985 (9th Cir. 2009). On a prima facie showing, the court resolves all contested facts in favor of the non-moving party. In re Western States, 715 F.3d at 741; AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996) (if conflicted facts are contained in the parties' affidavits, the facts must be resolved in favor of the plaintiff for purposes of determining whether a prima facie case of personal jurisdiction has been established.) At the same time, however, the plaintiff cannot establish jurisdiction by alleging bare jurisdictionally-triggering facts without providing some evidence of their existence. Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977).

"Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the court sits." Marvix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011) (citations omitted). California's long-arm statute is "coextensive with the outer limits of due process under the state and federal constitutions, as those limits have been defined by the United States Supreme Court." Republic Int'l Corp. v. Amco Eng'rs, Inc., 516 F.2d 161, 167 (9th Cir. 1976) (quoting Threlkeld v. Tucker, 496 F.2d 1101, 1103 (9th Cir. 1974)). As such, the Court need only consider the requirements of due process. Due process requires that nonresident defendants have "minimum contact" with the forum state "such that the

maintenance of the suit does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Personal jurisdiction can be either "general" or "specific." See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 (1984).

The parties do not dispute that the Court lacks general personal jurisdiction over ABN[1] but are in disagreement as to whether the Court has specific personal jurisdiction over ABN.

**B.     Specific Personal Jurisdiction over ABN**

Defendant contends that this Court lacks specific jurisdiction over it because it did not purposefully avail itself to the privilege of conducting activities in California and requiring it to be subject to personal jurisdiction in this district would not comport with fair play and substantial justice. In response, Plaintiff contends that this Court may assert specific personal jurisdiction over ABN because it purposely availed itself of the privilege of conducting activities in California.

Specific jurisdiction exists when a case "aris[es] out of or relate[s] to the defendant's contacts with the forum." Helicopteros Nacionales de Colombia, S.A., 466 U.S. at 414 n. 8. The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant "focuses on 'the relationship among the defendant, the forum, and the litigation." Walden v. Riore, 134 S. Ct. 1115, 1121 (2014). Specific jurisdiction is limited to ruling on "issues deriving from, or connected with, the very controversy that establishes jurisdiction." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (citation omitted).

The Ninth Circuit conducts a three-prong test to determine whether a non-resident defendant is subject to specific personal jurisdiction,

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the

---

[1] In its opposition, Plaintiff did not address or dispute Defendant's argument that the Court lacks general personal jurisdiction over it.

- 4 -                                              [17CV87-GPC(MDD)]

> benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004) (citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). "A purposeful availment analysis is most often used in suits sounding in contract," while a "purposeful direction analysis . . . is most often used in suits sounding in tort." Id. "[P]urposeful availment" asks whether a defendant has "purposefully avail[ed] [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Picot v. Weston, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting Schwarzenegger, 374 F.3d at 802). For tort claims, a "purposeful direction" test looks "to evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." Id. (citing Schwarzenegger, 374 F.3d at 802-03). The plaintiff bears the burden of satisfying the first two prongs and then the burden shifts to the defendant to make a "compelling case" that the third part has not been met. Schwarzenegger, 374 F.3d at 802. "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1155 (9th Cir. 2006) (internal citations and quotations omitted).

Here, Defendant argues that the purposeful availment analysis applies because UST's claims do not sound in tort while Plaintiff applies the purposeful direction test without explaining why. Neither party has addressed what analysis should apply to a cause of action for correction of inventorship pursuant to a U.S. patent statute.

Courts in the Ninth Circuit have applied the purposeful direction test in intellectual property infringement cases as they are akin to a tort. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1320 (9th Cir. 1998) (trademark); Symantec Corp. v. Acronis, Inc., C 12-05331 SI, 2013 WL 496290, at *3-4 (N.D. Cal. Feb. 7, 2013) (applying Federal Circuit's personal jurisdiction analysis, the purposeful direction test, to patent infringement case); Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218,

1228 (9th Cir. 2011) (copyright infringement).

The Federal Circuit has held that its law applies to the issue of personal jurisdiction if an issue is "intimately related to patent law." Silent Drive, Inc. v. Strong Indus., Inc., 326 F.3d 1194, 1201 (Fed. Cir. 2003) (applying its law on personal jurisdiction since a declaratory action for patent invalidity and non-infringement is intimately related to patent law); Red Wing Shoe Co., In. v. Hockerson-Halberstadt, Inc., 148 F.3d 1355, 1358 (Fed. Cir. 1998) (Federal Circuit applies its law, rather than that of the regional circuits, to determine personal jurisdiction in a patent infringement case.); Avocent Huntsville Corp. v. Aten Int'l Co., 552 F.3d 1324, 1328 (Fed. Cir. 2008) (quoting Akro Corp. v. Luker, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (Because the question of jurisdiction is "intimately involved with the substance of the patent laws," a district court faced with a patent infringement suit applies the law of the Federal Circuit when analyzing the existence of personal jurisdiction).

In this case, correction of inventorship is an issue intimately related to patent law and the Court applies the Federal Circuit's standard on personal jurisdiction. See Cray Inc. v. Raytheon Co., 179 F. Supp. 3d 977, 987-88 (W.D. Wash. 2016) (applying Federal Circuit's personal jurisdiction analysis to the plaintiff's correction of inventorship claims.); Breed v. Hughes Aircraft Co., 253 F.3d 1173, 1177(9th Cir. 2001) (claims based on 35 U.S.C. § 256, arise under the patent laws).

Similar to the Ninth Circuit's purposeful direction test, the Federal Circuit considers the following three factors when determining whether the due process requirement for specific personal jurisdiction are met:

> (1) whether the defendant "purposefully directed" its activities at residents of the forum; (2) whether the claim "arises out of or relates to" the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is "reasonable and fair".

Silent Drive, Inc., 326 F.3d at 1202. The plaintiff bears the burden of establishing the first two elements of the due process requirement. Elecs. for Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003). Once the plaintiff meets its burden, the burden shifts to the defendant to prove that personal jurisdiction is unreasonable. Id.

### 1. Purposeful Direction

ABN's CEO, William Kirk, states that ABN is a Maryland corporation with its principal place of business in Columbia, Maryland. (Dkt. No. 12-2, Kirk Decl. ¶ 2.) ABN does not purchase, sell, distribute, or advertise any products. (Id. ¶ 5.) It does not have any offices, bank accounts, or real estate in California. (Id. ¶ 6.) All decisions concerning ABN's business, including research/development, intellectual property and licensing activity occur in Maryland. (Id. ¶ 8.) ABN's Chief Scientific Officer, Dr. Modechi Harel, asserts that ABN developed technology relating to the delivery of probiotic bacteria. (Dkt. No. 12-4, Harel Decl. ¶ 3.) Part of that technology is claimed in the '245 patent which is assigned to ABN and he and Keren Kohavi-Beck are named as inventors. (Id. ¶ 4.) On information and belief, around November 2003, Dr. Bronshtein traveled to Columbia, Maryland to meet with ABN executives regarding entering into a potential consulting arrangement. (Id. ¶ 5.) On information and belief, during that visit, Dr. Bronshtein negotiated a Mutual Confidentiality Agreement ("MCA") with ABN and later traveled to Maryland and negotiated a Consulting/Development Agreement ("CDA") with ABN. (Id. ¶ 6.) During the course of the relationship, Dr. Bronshtein traveled to Maryland at least two times to discuss findings and developments related to his consulting services, and on one occasion, to produce a biologic using ABN's production facility. (Id. ¶ 7.) Most interactions with Dr. Bronshtein occurred through conference calls and emails to ABN personnel located in Maryland. (Id. ¶ 8.) ABN claims that all of these relevant acts occurred at its principal place of business in Maryland and a contract between the parties, by itself, does not warrant specific personal jurisdiction.

In response, Dr. Bronshtein states that in May 2004, he met Walt Rakitsky, an employee of ABN, in his office in San Diego, CA. (Dkt. No. 15-1, Bronshtein Decl. ¶ 2; id., Ex. A (emails).) Rakitsky was attempting to recruit Dr. Bronshtein to work with ABN to assist it in seeking assistance "in methods for preserving various biologic materials in a manner that would not damage the biomaterials." (Id. ¶ 2.) After that

meeting, ABN emailed Dr. Bronshtein to schedule a meeting in San Diego with another ABN employee and Tom Allnut, the Chief Scientific Officer in June 2004. (Id. ¶ 3; id., Ex. B (emails).)

Because of these meetings in San Diego, Dr. Bronshtein developed plans for experiments that later he and his employee, Ed Vonsovish, performed in UST's lab in San Diego. (Id. ¶3.) Dr. Bronshtein emailed the results of these experiments to Allnut and Dr. David Kyle, CEO of ABN, and had regular conference calls with ABN regarding the experiments he was performing in San Diego. (Id.) He received payment for his expertise and work in San Diego. (Id.) Based on the results, which demonstrated that his processes would achieve the results ABN wanted, ABN asked him to assist it in setting up equipment that could perform the processes he disclosed to them. (Id. ¶ 4.) Because ABN did not possess a freeze dryer or the expertise, at ABN's request and expense, he traveled to Maryland to assist in setting up a used freeze dryer that ABN bought and taught its personnel how to duplicate the results he had achieved at his lab in San Diego. (Id.) Dr. Bronshtein asserts that the agreements were negotiated in San Diego through in person meetings with Rakitsky and via emails with Dr. Kyle. (Id. ¶ 5.)

While Defendant presents facts that all contacts with Dr. Bronshtein only occurred in Maryland, it does not dispute the facts raised by Plaintiff in its opposition that ABN employees initially reached out to seek out Dr. Bronshtein's expertise and visited him in San Diego, that Dr. Bronshtein conducted experiments in San Diego to support ABN's project and kept ABN informed of the results, that the experiments were later replicated in Maryland and that he got paid for his work in San Diego. Moreover, all contested facts, such whether the agreements were negotiated and executed in San Diego are resolved in favor of UST. See In re Western States, 715 F.3d at 741. UST asserts that the two agreements were negotiated in San Diego. Based on these facts, the Court concludes that Plaintiff has demonstrated that Defendant purposefully directed its activities in California and purposefully derived and invoked

the benefits from its interstate activities in California. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-74 (1985).

### 2. Arising Out Of

As to the second factor, the Court considers whether the correction of inventorship claim arises out of ABN's contacts with California. See Elecs. for Imaging, 340 F.3d at 1351. ABN sent employees to San Diego on more than one occasion in order to recruit Dr. Bronshtein to assist in ABN's project, and as a result, the parties entered into confidentiality and consulting agreements that were negotiated in San Diego. Based on ABN's recruitment of Dr. Bronshtein, he and another employee conducted experiments in San Diego that were eventually replicated in Maryland by Dr. Bronshtein that later became the subject matter of the '245 patent. These facts arise out of Plaintiff's claim that Dr. Bronshtein was not named as an inventor or co-inventor of the subject matter of the '245 patent.

### 3. Reasonable and Fair

Finally, since the first two factors have been met, it is ABN's burden to demonstrate a "compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King, 471 U.S. at 477.

> The reasonableness inquiry encompasses factors including (1) the burden on the defendant, (2) the interests of the forum state, (3) the plaintiff's interest in obtaining relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.

Elecs. for Imaging, 340 F.3d at 1352.

Defendant argues that litigating in California would be burdensome as its operations are in Maryland and it would be burdensome and disruptive to its executives and key personnel. In this modern age of transportation and communications, litigation in one state over another does not create a greater burden for one party over another. Carnival Cruise Lines, Inc. v. Shute, 897 F.2d 377, 386 (9th Cir. 1990), rev'd on other grounds, Carnival Cruise Lines, Inc. v. Shute, 498 U.S. 807 (1990); Sinatra v. Nat'l

Enquirer, Inc., 854 F.2d 1191, 1199 (9th Cir. 1988) ("modern advances in communications and transportation have significantly reduced the burden of litigating in another country.") Litigating in California will not impose an unreasonable burden on Defendants.

Second, California has an interest in protecting its residents from incorrectly not being named an inventor on a patent he or she invented. Likewise, UST also has a strong interest in protecting itself from other entities claiming inventorship on processes and knowledge it invented. Fourth, Defendant argues that Maryland would be the most efficient in resolving the issues because the parties agreed, in the MDA and CDA, that Maryland law would apply; however, it is not clear whether the choice of law provision applies as there is no cause of action alleging breach of these agreements and the parties have not fully briefed this issue. Fifth, there is no conflict between California and Maryland in furthering their substantive laws as patent law would govern the case and no substantive social policies have been raised.

In considering these factors, Defendant has not demonstrated that the Court's personal jurisdiction over ABN would be unreasonable. The Court concludes that it has personal specific jurisdiction over the correction of inventorship claim.

The Court must have personal jurisdiction for each claim alleged against a defendant. Action Embroidery Corp. v. Atlantic Embroidery, Inc., 368 F.3d 1174, 1180 (9th Cir. 2004). Under the doctrine of pendant personal jurisdiction, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction." Id. The district court has discretion to decide whether to retain or dismiss pendant state-law claims. Id. at 1181.

Here, the remaining state law claims of unjust enrichment, declaratory relief, and constructive trust and accounting arise out of the same nucleus of operative facts as the

1  correction of inventorship claim; therefore, the Court exercises pendant personal
2  jurisdiction over these claims.
3  In sum, the Court concludes it has personal specific jurisdiction over ABN and
4  the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction.

**C.     Improper Venue**

Defendant argues that venue is not proper under 29 U.S.C. § 1391(b)[2] because the Court lacks personal jurisdiction over it and because the actions taken to file and prosecute the application for the '245 patent that give rise to Plaintiff's causes of action all occurred in Maryland. Plaintiff disagrees.

> (b) Venue in general.--A civil action may be brought in--
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). An entity is deemed to "reside" "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question . . . ." 28 U.S.C. § 1391(c)(2).

Defendant's argument is premised on its position that the Court lacks personal jurisdiction over it; however, because the Court concludes that it has personal jurisdiction over ABN, Defendant's argument fails as to 28 U.S.C. § 1391(b)(1). 28 U.S.C. § 1391(b)(2) contemplates that venue may be proper in more than one district

---

[2] Although the complaint alleges that venue is proper under 28 U.S.C. § 1400(b), Plaintiff does not oppose Defendant's argument that venue is not proper under that section which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." Therefore, the Court concludes that Plaintiff waives venue under 28 U.S.C. § 1400(b).

where a substantial part of the events giving rise to the claim occurred. Rodriguez v. Cal. Hwy. Patrol, 89 F. Supp. 2d 1131, 1136 (N.D. Cal. 2000). "Under 28 U.S.C. § 1391(a)(2), it is not necessary that a majority of the events occurred in the district where suit is filed, that the events in that district predominate, or that the chosen district is the best venue, rather plaintiff[ ] must show that a substantial part of the events giving rise to [its] claims occurred in the chosen district." Kelly v. Qualitest Pharms., Inc., No. CIV F-06-116 AWI LJO, 2006 WL 2536627, at *8 (E.D. Cal. Aug. 31, 2006) (citing Pecoraro v. Sky Ranch for Boys, Inc., 340 F.3d 558, 563 (8th Cir. 2003) (quotations omitted); Martensen v. Koch, 942 F. Supp. 2d 983, 997 (N.D. Cal. 2013) (citing Daniel v. American Bd. of Emergency Medicine, 428 F.3d 408, 432-33 (2d Cir. 2005) (A "substantial part of the events . . . giving rise to the claim" does not mean that a majority of the events occurred in the district."). "[S]ignificant events or omissions material to the plaintiff's claim must have occurred in the district in question." Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (2d Cir. 2005).

Defendant's initial acts of sending its employees to San Diego to reach out and recruit Dr. Bronshtein for his expertise, the experiments he and a UST employee conducted in San Diego concerning a project for ABN, paying him for such work and then replicating the experiments he conducted in San Diego in Maryland that eventually became the subject the subject matter of the '245 patent are not disputed by ABN. Because "substantial part of the events . . .giving rise to the claim occurred" in this district, venue is proper in this district under 28 U.S.C. § 1391(b)(2).

**D.    Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)**

Defendant, alternatively, seeks to transfer the case to the District of Maryland pursuant to 28 U.S.C. § 1404(a) due to a valid and enforceable forum selection clause contained in the MCA and the CDA. Plaintiff argues that the forum selection clause does not apply because it is not alleging a breach of those agreements but seeks a claim arising under a federal statute, and further contends that the forum selection clause's

language is permissive and not mandatory.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil matter to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of § 1404(a) is to "prevent the waste of time, energy, and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (internal citations and quotation marks omitted). A motion to transfer lies within the broad discretion of the district court and must be determined on an individualized basis. See Jones v. GNC Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000). Defendant has the burden to show that the action should be transferred under § 1404(a). Id. at 497-99.

### 1. Forum Selection Clause

Forum-selection clauses are presumptively valid and will be ordered unless it is clearly shown to be "unreasonable and unjust, or the clause was invalid for reason such as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); Manetti-Farrow, Inc. v. Gucci America, Inc., 858 F.2d 509, 512 (9th Cir. 1988) A contractually valid forum selection clause should be given "controlling weight in all but the most exceptional cases." Atlantic Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas, 134 S. Ct. U.S. 568, 585(2013). In order for a forum selection clause to establish exclusive venue, the language must be mandatory and not permissive. Docksider, Ltd. v. Sea Tech ., Ltd., 875 F.2d 762, 763 (9th Cir.1989)

In this case, the parties entered into a Mutual Confidentiality Agreement on November 30, 2003. (Dkt. No. 12-2, Kirk Decl. ¶ 9, Ex. 1.) The MCA provided that, "[t]his Agreement shall be governed by the substantive laws of the State of Maryland . . . . Each party **irrevocably consents** to the personal jurisdiction of, and venue in, the state and federal courts within the State of Maryland." (Id. ¶ 6 (emphasis added).) On June 1, 2004, the parties also entered into a Consulting/Development Agreement. (Dkt.

No. 12-3, Kirk Decl. ¶ 9, Ex. 2 (emphasis added).)   The CDA stated that "[t]his Agreement and all rights and obligations hereunder shall be governed and construed in accordance with the laws of the State of Maryland, excluding provisions relating to conflicts of law." (Id. ¶ 8.)  The CDA also incorporates by reference the conditions in the MCA.  (Id. ¶ 3.)

District courts in the Ninth Circuit have held that "irrevocably consents" is permissive language and not mandatory.  See Farrar v. Cupcake Digital, Inc., 16cv4677-CAS-JEM, 16cv4677-CAS-JEM, 2017 WL 395311, at *3 (C.D. Cal. Jan. 16, 2017) (" . . . each of the parties hereto *irrevocably consents* to the jurisdiction and venue of the federal and state courts located in the State of New York" held to be the parties' expressed consent to potential venue in New York, not mandatory); High-Bassalik v. Al Jazeera America, 15cv4427-CAS(FFMx), 2015 WL 9695227, at 7-8 (C.D. Cal. Nov. 2, 2015) ("*irrevocably consents* to the jurisdiction and venue of the federal, state and local courts within the State of California" held to be permissive) (emphasis added) (citing Blanco v. Banco Indus. de Venezuela, S.A., 997 F.2d 974, 979 (2d Cir. 1993) (holding that forum-selection clause was permissive where parties "irrevocably submit[ted]" to the jurisdiction of a designated forum); X–Cel Sales LLC v. A.O. Smith Corp., No. CV 11-1082-PHX-GMS, 2012 WL 273693, at *2 (D. Ariz. Jan. 31, 2012) (finding that language in a forum-selection clause that "[Plaintiff] irrevocably consents to the jurisdiction and venue of the United States District Court for the Middle District of Tennessee . . . does not make Tennessee's jurisdiction exclusive."); First South Bank v. Fifth Third Bank, N.A., No. 10cv2097-JMC, 2011 WL 3419451, at *2 (D.S.C. Aug. 3, 2011) ("According to the Agreement, the parties irrevocably submitted to the jurisdiction of any federal or state court in Charlotte, North Carolina, but there is no language in the Agreement indicating the parties were restricted to exclusive jurisdiction in Charlotte only.")); but see CoStar Realty Info., Inc. v. Meissner, 604 F. Supp. 2d 757, 772 (D. Md. 2009) (forum selection clauses in two separate agreements providing that the defendant "irrevocably consent[s]" to suit

in Maryland, expressed defendant's consent to suit in Maryland and were mandatory); Gutermuth Invs., Inc. v. Coolbrands Smoothies Franchise, LLC, SA-06-CA-471 RF(NN), 2006 WL 2933886, at *2 (W.D. Tex. Oct. 11, 2006) ("irrevocably submits" to the jurisdiction" held to be exclusive and mandatory); cf. S&L Birchwood, LLC v. LFC Capital, Inc., 752 F. Supp. 2d 280, 285 (E.D.N.Y. 2010) ("irrevocably submits to the jurisdiction . . . and waives to the fullest extent allowed by law any objection to venue in such court" held to be mandatory as it contained combination of a permissive forum selection clause along with a waiver of an objection to venue).

Since the terms "irrevocably consents" has been held to be permissive and the venue provision in the MCA contains no mandatory language, transferring the case is not mandatory and the Court considers the typical 28 U.S.C. § 1404 factors not involving a forum-selection clause.

### 2. Whether the Action Could Have Been Brought in the District of Maryland

First, Defendant asserts that the case could have been brought in the District of Maryland since it is subject to personal jurisdiction in that district. A civil action may be brought in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Here, Defendant argues it is subject to personal jurisdiction in the District of Maryland because it maintains its principal place of business in Maryland. In addition, some of the events giving rise to Plaintiff's claims occurred in Maryland as Dr. Bronshtein visited Maryland and ABN directed the filing and prosecution of the '245

patent application in Maryland. Moreover, the parties consented to venue in Maryland. Therefore, the case could have be brought in the District of Maryland.

### 3. Convenience Factors and Interests of Justice

Since the Court determines that the case could have been brought in the District of Maryland, the Court looks to factors addressing the convenience of the parties, convenience of the witnesses, and the interests of justice which include "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof." Jones v. GNC Financing, Inc., 211 F.3d 495, 498-99 (9th Cir. 2000). Other factors the Court may consider are the existence of a forum selection clause and the public policy of the forum state. Id. at 498-99. The moving party bears the burden of persuasion to make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

The Court notes that Defendant has not addressed these factors since its analysis focused on an alternate § 1404 analysis based on a mandatory forum selection clause and therefore has not met its burden to demonstrate a transfer of the case. See Jones, 211 F.3d at 497-99; Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir. 1979). However, the Court addresses these factors below.

#### a. The location where the relevant agreement were negotiated and executed

The parties dispute where the two agreements were negotiated. Plaintiff asserts that the consulting agreement was negotiated in San Diego through in person meetings with Mr. Rikitsky and through emails with Dr. Kyle. (Dkt. No. 15-1, Bronshtein Decl. ¶ 5.) In contrast, Defendant asserts, on information and belief, that the two agreements

were negotiated in Maryland. (Dkt. No. 12-4, Harel Decl. ¶ 6.)

"When reviewing a motion to transfer venue ... a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." Sleepy Lagoon, Ltd. v. Tower Grp., Inc., 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011); see Murphy v. Schneider Nat'l, Inc., 362 F.3d 1133, 1137 (9th Cir. 2004) (when facts are disputed on a motion to enforce forum selection clause, the court must accept the non-moving party's sworn factual assertions as true).

Here, as noted above, Plaintiff alleges that the two agreements were negotiated in California. Thus, this factor does not support transfer of the case.

### b. The state most familiar with the governing law

As to the first cause of action for correction of inventorship, 35 U.S.C. § 256, neither state is most familiar with the governing law since it falls under the U.S. patent laws. As to the remaining state and common law causes of action, it is not clear which state law would apply. Defendant argues that Maryland state law would apply because of the choice of law provisions in the two agreements. However, Plaintiff disputes arguing that it is not alleging a breach of the CDA or MCA. Without proper briefing by the parties that is supported by legal authority, the Court declines to consider which state law would apply at this time; therefore, this factor is neutral.

### c. Plaintiff's choice of forum

Plaintiff's choice of forum is given great weight. Lou v. Belzberg, 834 F.2d 730, 739 (9th Cir.1987). "The degree to which courts defer to the plaintiff's chosen venue is substantially reduced where the plaintiff does not reside in the venue or where the forum lacks a significant connection to the activities alleged in the complaint." Williams v. Bowman, 157 F. Supp. 2d 1003, 1107 (N.D. Cal. 2001) (citing Fabus Corp. v. Asiana Exp. Corp., C-00-3172PJH, 2001 WL 253185 (N.D. Cal. Mar. 5, 2001)). This factor favors Plaintiff. Here, Plaintiff has its principal place of business in this district and certain acts giving rise to the causes of action took place in this district.

1 This factor does not favor transfer.

### d. The parties' contacts with the forum

UST has its principal place of business in this district while ABN has its principal place of business in Maryland and has no offices or employees in this district. UST argues, and the Court agrees, this factor is neutral.

### e. The contacts relating to the plaintiff's cause of action in the chosen forum

Plaintiff argues that the experiments upon which USTs correction of inventorship is based were performed in this district at ABN's request. The patent rights at issue were designed developed and produced in this district by a district resident. This factor does not favor transfer.

### f. Difference in costs of litigating

Plaintiff's evidence and key witnesses are located in this district and claims it will suffer significant prejudice since UST is a very small company with only 9 employees. (Dkt. No. 15-1, Bronshtein Decl. ¶ 6.) Plaintiff argues that attendance at trial in Maryland would essentially shut down UST's scientific experimentation operation since its key scientists would be forced to travel to Maryland. ABN is also a small company with about 15 employees. (Dkt. No. 12-1, Kirk Decl. ¶ 4.) Plaintiff claims, without evidentiary support, that ABN has muli-million dollar business collaborations.

Both UST and ABN are small companies and both sides would suffer prejudice if required to attend trial. The Court concludes, this factor is neutral as both parties would suffer inconveniences.

### g. Non-party witnesses

Convenience of the witnesses is often recognized to be most important factor in determining whether or not to transfer a case. Saleh v. Titan Corp., 361 F. Supp. 2d 1152, 1160 (S.D. Cal. 2005). UST states that the key scientists who performed the work at issue, Dr. Bronshtein and Mr. Vonsovich, are residents of San Diego. (Dkt.

No. 15-1 Bronshtein Decl. ¶ 6.) While ABN has not provided any evidence of any witnesses that would suffer any inconvenience, the same argument, that its scientists and executives are residents of Maryland and would suffer inconveniences would also apply. This factor is neutral.

### h. Ease of Access to Sources of Proof

Lastly, as to the ease of access to sources of proof, UST asserts that the lab notebooks and experimental equipment to demonstrate that he is the inventor of the '245 patent are located in his laboratory in San Diego, CA.

"[G]eneral allegations that transfer is needed for the ease of obtaining records and books are not enough . . . but the moving party must "show the location and the importance of the documents in question." DeFazio v. Hollister Employee Share Ownership Trust, 406 F. Supp. 2d 1085, 1091 (E.D. Cal. 2005) (quoting Wright, et al., Federal Practice 3853-54 at 538.) Because modern technology has made it easier to move records from one forum to another, the court should consider whether "moving . . . records would cause hardship to a business." Id.

Here, Defendant has not argued inconveniences based on ease of access to sources of proof. Plaintiff generally alleges that documents and equipment are located in San Diego. This factor does not support transfer.

### i. Forum selection Clause

Here, a permissive forum selection clauses exists where the parties consented to venue in Maryland, and therefore, this factor weights in favor of transfer.

### j. Public Policy

The parties have not identified any public policy reasons why the case should or should not be transferred.

In reviewing the factors to determine whether the case should be transferred, Defendant has not demonstrated a strong showing of inconvenience to warrant upsetting UST's choice of forum. See Decker, 805 F.2d at 843. Therefore, the Court DENIES ABN's motion to transfer the case to the District of Maryland.

## Conclusion

Based on the above, the Court DENIES Defendant's motion to dismiss for lack of personal jurisdiction and improper venue and DENIES Defendant's motion to transfer this action to the District of Maryland. The hearing set for May 12, 2017 shall be **vacated.**

IT IS SO ORDERED.

DATED: May 8, 2017

HON. GONZALO P. CURIEL
United States District Judge