UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNIVERSAL STABILIZATION TECHNOLOGIES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED BIONUTRITION CORP.,<br><br>Defendant. | Case No.: 17cv87-GPC(MDD)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR ATTORNEY'S FEES**<br><br>**[REDACTED ORIGINAL FILED UNDER SEAL]**<br><br>**[Dkt. No. 100.]** |

Before the Court is Defendant's motion for attorneys' fees under 35 U.S.C. § 285. (Dkt. No. 100.) Plaintiff filed an opposition on October 12, 2018. (Dkt. No. 113.) Defendant filed a reply on October 26, 2018. (Dkt. No. 115.) After a review of the briefs, supporting documentation, the record, and applicable law, the Court DENIES Defendant's motion for attorneys' fees pursuant to 35 U.S.C. § 285.

## Background

On January 16, 2017, Plaintiff Universal Stabilization Technologies, Inc. ("Plaintiff" or "UST") filed a complaint against Defendant Advanced Bionutrition Corporation ("Defendant" or "ABN") for correction of inventorship of U.S. Patent No. 8,097,245 ("'245 patent") pursuant to 35 U.S.C. § 256, unjust enrichment, declaratory relief, and constructive trust and accounting. (Dkt. No. 1, Compl.) The '245 patent is entitled "Delivery Vehicle for Probiotic Bacteria Comprising a Dry Matrix of

1

17cv87-GPC(MDD)

Polysaccharides, Saccharides and Polyols in a Glass Form and Methods of Making Same." (Dkt. No. 1-2, Ex. 1 at 2[1].) Defendant ABN is listed as the assignee and Mordechi Harel and Keren Kohavi-Beck are named as the inventors of the '245 patent. (Id.) ABN's technologies relate to numerous industries and include human and animal nutrition and health. (Dkt. No. 12-4, Harel Decl. ¶ 2.) It has developed technology relating to the delivery of probiotic bacteria and some of this technology is claimed in the '245 patent. (Id. ¶¶ 3,4.)

On June 1, 2004, ABN hired Dr. Bronshtein and UST as a consultant pursuant to a Consulting Development Agreement ("CDA") related to ABN's previously developed probiotic technology. (Dkt. No. 63-6, Blaszkowki Decl., Ex. C, CDA (UNDER SEAL).) The CDA "provides the framework for application of UST's and ABNC technological knowledge to joint development of ambient and elevated temperature stable probiotic bacteria formulations and products to be delivered in the gut using ABNC technology for application as nutrition and disease control ingredients for aquaculture and agriculture feeds, human foods, and dietary supplements." (Id., CDA ¶ 1 (UNDER SEAL).) In addition, "UST agrees to use its best efforts to understand, improve, and advance ABNC technology that has been developed to enrobe and protect active biologics as well as increase the stability of biologics to processing and storage." (Id. (UNDER SEAL).)

Under the CDA, the parties recognized that Dr. Bronshtein has certain "know-how . . . relating to preservation technology, including but not limited to formulations and processes for stabilizing materials in the dry state at temperatures and humidities that are higher than currently possible thus improving survival rates of biological materials." (Id., CDA at 2 (UNDER SEAL).) ABN's technology is described as a "novel formulation platform . . . that allows for the delivery of probiotics into the gut . . . ." (Id., CDA at 2 (UNDER SEAL).) ABN "desires to obtain the benefits of UST's expertise and

---

[1] Page numbers are based on the CM/ECF pagination.

knowledge to identify and develop formulation approaches designed to improve the stability of biologics processed using ABNC technology." (Id. (UNDER SEAL).) Dr. Bronshtein and UST additionally acknowledged that ABN's technology "allows for the delivery of probiotics into the gut, by protecting damage of the bacteria in the stomach. One embodiment of the technology is achieved by encapsulating probiotics in a high amylose starch and phospholipids mixture, held together by cross linked alginate." (Id. (UNDER SEAL).)

Over the course of two and a half years, ABN paid UST over $270,000, (Dkt. No. 63-8, Blaszkowski Decl., Ex. E, Bronshtein Depo. at 67:2-13), with the expectation that Dr. Bronshtein would advance ABN's technology but according to ABN, Dr. Bronshtein did not contribute to ABN's work. (Dkt. No. 63-5, Blaszkowski Decl., Ex. B., Kirk Depo. at 17:15-20.) Due to his work with ABN, Plaintiff claims Dr. Bronshtein is either the inventor or a co-inventor of the '245 patent.

On August 21, 2018, the Court granted Defendant's motion for summary judgment and denied Plaintiff's cross-motion for summary judgment. (Dkt. No. 99.) On September 20, 2018, Plaintiff filed a notice of appeal. (Dkt. No. 105.) On September 4, 2018, Defendant filed a motion for attorney's fees under 35 U.S.C. § 285 claiming the case is exceptional. Plaintiff disagrees.

## Discussion

### A. Attorney's Fees under 35 U.S.C. § 285[2]

Defendant moves for attorney's fees under 35 U.S.C. § 285 arguing that the case is exceptional because UST lacked the substantive basis for its inventorship claims and because of the unreasonable manner in which UST litigated the case. Plaintiff opposes

---

[2] As a threshold issue, Plaintiff argues that procedurally because Defendant failed to comply with Federal Rules by providing "the amount sought or provide a fair estimate of it", the Court should deny the motion. Fed. R. Civ. P. 54(d)(2)(B). Because the Court denies Defendant's motion for attorney's fees, the Court need not address this argument.

3

arguing that it had a reasonable basis for its claim of inventorship and did not conduct litigation in an unreasonable way.

In patent cases, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. An "exceptional" case under § 285 is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014). District courts "may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id.; see Highmark Inc. v. Allcare Health Mgmt. Sys., 572 U.S. 559, 561 (2014) (abuse of discretion applies to district court's § 285 determination). Attorney's fees are awarded "in the rare case in which a party's unreasonable conduct-while not necessarily independently sanctionable-is nonetheless so 'exceptional' as to justify an award of fees." Octane Fitness, 134 S. Ct. at 1757. Courts may consider non-exclusive factors such as "frivolousness, motivation, and objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. n. 6. The moving party must demonstrate exceptionality by a preponderance of the evidence. Id. at 1758.

**B.      Substantive Strength of Plaintiff's Litigating Position**

ABN argues that UST never had a valid claim of inventorship from the beginning, UST disregarded the claim construction order which foreclosed any reasonable argument that Dr. Bronshtein was an inventor, Plaintiff should have known that the legal standard for correction of inventorship requires more than the alleged inventor's testimony and because Plaintiff failed to present any corroborating evidence, it did not have a good faith basis to bring a complaint. UST opposes each argument.

First, Defendant argues that Plaintiff lacked a substantive basis for its inventorship claim by relying on inadmissible laboratory notebooks that were unsigned and

4

unwitnessed and UST doomed its own case by relying on Dr. Bronshtein to improperly corroborate his own testimony. UST responds that it did not rely solely on Dr. Bronshtein but also relied on ABN's own notebooks, the notes of Dr. Allnutt, Dr. Harel, the named inventor and Dr. Vonsovich, a UST employee to corroborate Dr. Bronshtein's testimony.

The Court agrees with UST that it relied on other evidence to corroborate Dr. Bronshtein's testimony but they were ultimately held to be inadmissible. Plaintiff also had a good faith belief, albeit legally incorrect, that Dr. Bronshtein's notebook pages could be witnessed by Dr. Vonsovich, who worked closely with Dr. Bronshtein, maintained all of Dr. Bronshtein's laboratory notebooks during his work with ABN and recorded the experiments. Reliance on these documents was not unreasonable.

Defendant also claims that Dr. Bronshtein wrote to ABN over 10 years ago, in 2008, claiming that he was the inventor of the '245 patent and when ABN asked for evidence, Dr. Bronshtein never attempted to back up his claim. (Dkt. No. 100-5, Ex. D, Kirk Depo. at 20:7-16.) Plaintiff disputes ABN's assertion that he did not try to obtain evidence to support his claim providing an email exchange with Dr. Thomas Allnutt, who used to work at ABN. (Dkt. No. 113-5, Coddington Decl., Ex. 4.) On August 1, 2008, Dr Bronshtein emailed Dr. Allnutt explaining his dispute of inventorship with ABN concerning the drying process and sought assistance from Dr. Allnutt inquiring whether ABN had any documentation to support his position. (Id.) In response, on August 4, 2008, Dr. Allnutt emailed Dr. Kirk, the CEO of ABN, concerning Dr. Bronshtein's request for records of ABN's work with UST and noting that his notebooks in the archived database should have the information that Dr. Bronshtein is seeking. (Id.) Contrary to ABN's argument, Dr. Bronshtein attempted to obtain documents to support his claim.

Next, Defendant argues that UST improperly relied on inadmissible settlement statements barred by Federal Rule of Evidence 408. Plaintiff argues it is not offering ABN's admissions during settlement negotiations to prove liability, but instead to show

5

the reasonableness of Dr. Bronshtein's inventorship claim. UST claims it had a reasonable basis to claim Dr. Bronshtein was an inventor based on ABN's admission that Dr. Bronshtein contributed to the isomalt ratios described claim 1, step b of the '245 patent relying on a letter dated July 31, 2008 and email dated June 25, 2008 by Dr. William Kirk ("Dr. Kirk"), the CEO of ABN.

Although the Court held the settlement communications were inadmissible under Federal Rule of Evidence 408 on summary judgment, it may be considered when considering an award of attorney's fees. See e.g., Ingram v. Oroudjian, 647 F.3d 925, (9th Cir. 2011) ("district court did not err by considering settlement negotiations for the purpose of deciding a reasonable attorney fee award in this case."). ▮

▮ (Dkt. No. 93-1, Coddington Decl., Ex. 8 at 7-8, ABN-0000771 to ABN-0000772 (UNDER SEAL).) ▮

▮ (Dkt. No. 95-1, Blaszkowski Decl., Ex. Q (UNDER SEAL).) ▮

▮ (Id. (UNDER SEAL).)[3] ABN's admission that

---

[3] In reply, ABN claims, without explanation, that the isomalt composition claims never issued and cites to a document entitled, "Response to July 6, 2011 Imposed Restriction Requirement for U.S. Patent Application No. 12/159,407." (Dkt. No. 81-8, Blaszkowski Decl., Ex. R, ABN-0000480-81; 0000093-97, 101-06.) The document provides changes to certain claims where some were withdrawn and new claims were added. (Id.) ABN does not specifically explain how the isomalt was withdrawn by this document, and the Court notes that the issued '245 patent includes "isomalt" in claim 1(b). ABN has not demonstrated that the isomalt composition claims are not a part of the '245 patent.

6

Dr. Bronshtein contributed to the isomalt ratio created a reasonable basis for Plaintiff to assert a claim for inventorship.

Furthermore, ABN argues that email exchanges between Dr. Bronshtein and ABN show that Dr. Harel instructed Dr. Bronshtein regarding ABN's MicroMatrix technology, the base technology claimed by the '245 patent. However, in response, Plaintiff notes that emails exchanged between the Micro-Matrix team and Dr. Bronshtein also reveal that he presented ABN with protocols to utilize. For example, Dr. Bronshtein suggested a drying protocol on June 20, 2005. (See Dkt. No. 93-1, Coddington Decl., Ex. 8, ABN-0000586 (UNDER SEAL).) Though Dr. Bronshtein's drying protocol as to the temperature was similar to the '245 patent, it did not provide an exact match. (Dkt. No. 97 at 21-25.) Moreover, due to UST's failure to provide expert testimony or scientific support for Dr. Bronshtein's pressure protocol, and the Court's claim construction of "temperature," Plaintiff did not meet its burden on summary judgment. Dr. Bronshtein provided protocols and conducted experiments for ABN, and it was not unreasonable for UST to pursue an inventorship claim.

Finally, ABN argues that UST disregarded the claim construction order which foreclosed any reasonable argument that Dr. Bronshtein was an inventor. UST sought summary judgment where he relied on his own interpretation rather than the Court's claim construction order. In response, UST argues that the claim construction did not foreclose his inventorship claim because he could still be deemed a co-inventor if he contributed to some original aspect of the patent.

The Court agrees with UST that irrespective of the claim construction order which only construed "a first drying phase" and "a second drying stage" and "the temperature" in claims 1(e), and 1(f), (Dkt. No. 61 at 4-5), at summary judgment, Plaintiff also argued that Dr. Bronshtein conceived other concepts of the '245 patent such as the "trehalose to sugar alcohol/polyol . . . in ratios 3:1 and 2:1 as recited in step b) of claim 1 and claim 10; maintaining the temperature [sic] the harvested gel above the freezing temperature of water as recited in step d) of claim 1; . . . the pressure values and changes recited in

7

claims 2, 4, and 5; and the time periods recited in claim 3." (Dkt. No. 72-1, P's Opp. at 13-14.) Therefore, it was not unreasonable for UST to proceed with litigation after the claim construction order despite the Court's ruling. See SmartMetric, Inc. v. MasterCard Int'l, Inc., Case No CV 11-7126-MWF(AJWx), 2015 WL 12582630, at *3 (C.D. Cal. 2015) (case was not exceptional where the plaintiff pursued an argument despite a negative claim construction ruling because a claim construction order itself did not legally determine the issue of infringement).

The Court concludes that UST had a reasonable basis to assert an inventorship claim based on Dr. Bronshtein's collaboration for two and a half years with ABN, from 2004 to 2006, and during the time that the '245 patent was being developed. Dr. Harel testified that the patent application was written in 2005. (Dkt. No. 63-4, Blaszkowski Decl., Ex. A, Harel Depo. at 96:18-19.) Failure to win on summary judgment is not a basis for an attorney's fee award under § 285. See Octane, 572 U.S. at 548 (award of fees is not "a penalty for failure to win a patent infringement suit"). ABN's reliance on reasons why UST's claims failed on summary judgment does not justify attorney's fees as an exceptional case.

The Court does not find that case exceptional as to the substantive strength of Plaintiff's litigating position.

## C. Manner of Litigation

As to the manner of litigation, ABN contends that UST's primary objective in the litigation was to uncover ABN's sensitive financial information, to coerce a payment, and as a result, its conduct prolonged the case. UST focused a significant portion of discovery and motion practice on ABN's financials. UST argues that the financial information was relevant for purposes of settlement at the early neutral evaluation conference and for the unjust enrichment claim.

The parties filed a joint motion for determination of discovery dispute on November 20, 2017 where UST sought to compel the production of documents concerning an asset purchase agreement ("APA") between ABN and a third party and a

separate "side agreement" with the third party regarding the patent at issue. (Dkt. No. 47.) On December 13, 2017, the Magistrate Judge denied Plaintiff's motion to compel production of documents but concluded that the covenant not to sue within the "side agreement" amounts to a license for the '245 family of patents and to the extent that consideration was paid, such evidence may be relevant.[4] (Dkt. No. 52 at 5.) Then on February 7, 2018, the parties filed a joint motion for determination of discovery dispute concerning ABN's motion for a protective order barring UST from deposing its corporate representatives on certain topics concerning, *inter alia*, ABN's finances and investors that it claims are not relevant to the question of inventorship and the APA, which the court had already denied on UST's motion to compel. (Dkt. No. 57.) On February 15, 2018, the Magistrate Judge granted in part and denied in part Defendant's motion for protective order concluding that Plaintiff's request for ABN's financials for a 13 year period overbroad but would allow certain topics if it was limited solely to financial information pertaining to the '245 patent or "limited to the question of consideration for the related covenant not to sue." (Dkt. No. 58 at 4-5.) The Court also granted the motion as to the APA as it had already held that the APA was not relevant. (Id. at 5.)

A case may be exceptional based on the unreasonable manner in which it was litigated. Octane Fitness, 572 U.S. at 555. "But sanctionable conduct is not the appropriate benchmark." Id. "[T]he aim of § 285 is to compensate a defendant for attorneys' fees it should not have been forced to incur." Kilopass Technology, Inc. v. Sidense Corp., 738 F.3d 1302, 1313 (Fed. Cir. 2013). Courts "have generally recognized, however, that while the bar a prevailing party must clear to establish an 'exceptional' case has been lowered, an award of fees involves litigation conduct that goes beyond mere stonewalling, excessive discovery demands, or otherwise burdensome litigation

---

[4] Despite the Court's conclusion that discovery concerning any consideration paid for the covenant to sue was relevant, because Plaintiff violated the Magistrate Judge's civil chambers rules, the court denied the motion but noted that discovery was still open and Plaintiff could seek the information through other discovery methods. (Dkt. No. 52 at 5.)

9

strategies." Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc., Case No. 13-21604, 2017 WL 3610583, t *4 (S.D. Fla. Aug. 11, 2017) (quoting Intellectual Ventures I LLC v. Capital One Fin. Corp., Civil Action N0. 13cv740 (AJT/TCB), 2015 WL 7283108, at *4 (E.D. Va. Nov. 17, 2015)).

In Oplus Techs., Ltd. v. Vizio, Inc., 782 F.3d 1371 (Fed. Cir. 2015), the Federal Circuit held that the district court abused its discretion in denying fees under § 285 where it found the case exceptional on the substance of the plaintiff's claims and "ample evidence" of litigation misconduct describing counsel's behavior as "inappropriate," "unprofessional," "vexatious," and "harassing". Id. at 1374. As part of its findings, the district court found an "abusive discovery strategy" where the plaintiff "misused the discovery process to harass [the defendant] by ignoring necessary discovery, flouting its own obligations, and repeatedly attempting to obtain damages information to which it was not entitled." Id. at 1374. The court noted that these abuses would have increased litigation costs for the defendant. Id. at 1375; see also Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 858 F.3d 1371, 1376 (Fed. Cir. 2017) (reversing district court grant of fees under § 285 as the charge of infringement was reasonable and "the litigation was not brought in bad faith with abusive tactics.").

Even after Octane, to warrant attorney's fees under § 285, litigation conduct must not only be egregious, Vasudevan Software, Inc. v. Microstrategy, Inc., Case No. 11cv6637-RS, 2015 WL 4940635, at *5 (N.D. Cal. 2015) (citations omitted) ("post-Octane decisions awarding fees have generally cited egregious behavior."); Aylus Networks, Inc. v. Apple, Inc., No. 13-cv-4700-EMC, 2016 WL 1243454, at *7 (N.D. Cal. Mar. 30, 2016) (same), but must be continuously egregious throughout the litigation. MyMedicalRecords, Inc. v Jardogs, LLC, Nos. 13cv3560-ODW(SHx), 13cv7285-ODW(SHX), 2015 WL 1781332, at *4 (C.D. Cal. Apr. 20, 2015) (noting courts have allowed fees under § 285 when there is "continuous egregious behavior throughout the case, not just one instance.") (citing IPVX Patent Holdings, Inc. v. Voxernet LLC, No. 5:13–CV–01708 HRL, 2014 WL 5795545, at *5 (N.D. Cal. Nov. 6, 2014) (finding the

case exceptional because the plaintiff never expected to prevail on literal infringement, proposed term constructions that were "absurd and farfetched," served a "boilerplate complaint on dozens of defendants," may not have performed pre-suit investigation, served inapplicable discovery requests, and did not expend the resources necessary to support its positions on infringement); Logic Devices, Inc. v. Apple Inc., No. C 13–02943 WHA, 2014 WL 6844821, at *1 (N.D. Cal. Dec.4, 2014) (finding numerous instances of egregious behavior by plaintiff including blindly adopting and filing a complaint drafted by another firm; waiting four months to serve defendant; misrepresenting that a terminal disclaimer had been filed; and failing to comply with patent local rules)); see e.g., SFA Sys., LLC v. Newegg Inc., 793 F.3d 1344, 1350 (Fed. Cir. 2015) ("[A] pattern of litigation abuses characterized by the repeated filing of patent infringement actions for the sole purpose of forcing settlements, with no intention of testing the merits of one's claims, is relevant to a district court's exceptional case determination under § 285.").

In MyMedicalRecords, the plaintiff opposed summary judgment on an issue already decided at claim construction and it requested damages-related discovery when the court directed the parties to focus on infringement and invalidity discovery which forced the defendant to file a discovery motion. The court explained that seeking damages-related discovery was reasonable but refusing to withdraw an invalidity claim after claim construction was unreasonable but concluded that in view of the totality of the circumstances, the case was not exceptional. MyMedicalRecords, 2015 WL 1781332, at *3.

Here, ABN has not demonstrated that UST's conduct during the litigation was egregious or an abuse of the discovery process. While UST attempted to obtain the APA on two occasions, as well as broad financial documents from ABN, such conduct does not constitute repetitive egregious conduct that amounts to an "exceptional" case.

ABN also argues that UST's "combative" conduct was addressed by the Magistrate Judge in the first discovery order noting Plaintiff's use of pejorative language in the joint

motion that ABN "developed a 'sneaky' way to avoid discovery on this asset sale" and it "cooked up" one of the documents at issue. (Dkt. No. 52 at 2-3.) The Magistrate Judge admonished UST to refrain from "further nastiness." (Id. at 3.) After this admonishment, it does not appear that the Court noted any further "nastiness."

Therefore, one instance of seeking discovery on an issue that was already ruled on by a prior court order and one instance of "nastiness" do make UST's conduct egregious.[5] The Court concludes that UST's litigation conduct was not unreasonable or abusive.

Accordingly, in considering the totality of the circumstances, the Court concludes that the case is not an "exceptional" one under 35 U.S.C. § 285.

## Conclusion

Based on the above, the Court DENIES Defendant's motion for attorney's fees under 35 U.S.C. § 285 as the case is not "exceptional." The hearing set on November 30, 2018 shall be **vacated.**

IT IS SO ORDERED.

Dated: November 27, 2018

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] In reply, ABN argues for the first time that UST's conduct during litigation was unreasonable because it violated the protective order by publically disclosing ABN's confidential documents in its court filings and then withdrew the document and refiled them under seal and then filed an opposition to ABN's motion to seal these documents. The Court declines to consider an issue raised for the first time in reply and considers this argument waived. See United States v. Kama, 394 F.3d 1236, 1238 (9th Cir. 2005) ("Generally, an issue is waived when the appellant does not specifically and distinctly argue the issue in his or her opening brief."); United States ex. rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").